# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

In Re:                              )

                                     )     **JUDGE RICHARD L. SPEER**

Garland/Elena Scarberry            )

                                     )     Case No. 09-33316

        Debtor(s)                 )

                                     )

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 16). The Debtors filed a response to the Motion, objecting to the Dismissal of their case. (Doc. No. 19). A Hearing was then held on the matter. At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. (Doc. No. 22). The Court has now had the opportunity to review all of the arguments and evidence submitted in this case, and finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has Merit.

## LEGAL BACKGROUND

On May 18, 2009, the Debtors, Garland and Elena Scarberry (hereinafter referred to collectively as the "Debtors"), filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). It is well-established, however, that a debtor has no constitutionally protected right to receive a discharge in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *U.S. v. Kras*, 409 U.S. 434, 445-446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Bankruptcy is, instead, a legislatively

created benefit that Congress may withhold at its discretion. To that end, Congress has prescribed conditions under which a debtor's bankruptcy case may be dismissed without the entry of a discharge. *In re AC Rentals, Inc.*, 325 B.R. 339 (10th Cir. B.A.P. 2005). When, as here, a debtor seeks relief under Chapter 7 of the Bankruptcy Code, the conditions mandating dismissal are set forth in § 707.

In this case, the UST cited to three provisions under § 707 as the basis for its Motion to Dismiss: § 707(b)(1), § 707(b)(2) and § 707(b)(3). At the Hearing held in this matter, however, the United States Trustee withdrew that portion of its Motion which, as a basis for dismissal, cited to § 707(b)(2). Accordingly, the merits of this case will be predicated solely upon the grounds for dismissal as contained in § 707(b)(1) and § 707(b)(3).

Sections 707(b)(1) and 707(b)(3) operate together, allowing a court to dismiss a debtor's bankruptcy case when the particular circumstances of the filing of the case demonstrate abuse. In relevant part, these provisions provide:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
>> (A) whether the debtor filed the petition in bad faith; or
>>
>> (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

Page 2

Under this statutory framework, it may be said that § 707(b)(1) and § 707(b)(3) operate in a hierarchical fashion, with § 707(b)(1) first setting forth the foundational requirement, providing for the dismissal of case when abuse is found to exist, and then § 707(b)(3) providing a methodology by which to assess the existence of abuse under § 707(b)(1). Based upon the evidence presented to the Court, the facts relevant to the applicability of these provisions are detailed below.

## FACTS

The Debtors are married and have three children ages 12, 16, and 20. Both of the Debtors are employed. The Debtor, Mr. Scarberry, is employed as a foreman for a tool maker; Mrs. Scarberry set forth that she is employed as a customer service representative for a glass company. Mr. Scarberry has been with his employer for 25 years; Mrs. Scarberry has been with her employer for three years. Through their employers, the Debtors receive benefits, including health insurance for their family.

The Debtors' sole source of income is derived from their employment. As disclosed to the Court in their most recent filing, the Debtors reported $7,478.61 in gross monthly income, or $89,743.32 annually. (Doc. No. 20). Of this amount, $4,870.67 per month was attributable to Mr. Scarberry's employment, with the remaining $2,607.94 per month derived from Mrs. Scarberry's employer. After accounting for mandatory deductions, the Debtors reported that their combined net monthly income stood at $5,389.20. But, in putting forth this final figure, the Debtors made this caveat:

> Husband's wages/hours will be decreased 15% effective with the paycheck dated 9-15-09 (ie-overtime will be completely eliminated (prev OT est was based upon highest months preceeding [sic] MT look-back period, H has rcd only $1,844.11 ytd) and regular hours will be cut as well) the above figures are calculated based upon pay advices from 5-7-09 to 9-10-09; Wife's figures are based upon 5-8-09 to 9-04-09.

Page 3

In re: Garland/Elena Scarberry
Case No. 09-33316

Against their income, the Debtors claimed $5,389.20 in necessary, monthly expenses, thus resulting in a slight surplus, $75.20, in their monthly household budget. The Debtors' budgeted expenses included, but were not limited to the following itemized expenditures:

| | |
|---|---|
| $1,647.00 | for housing, comprising two mortgage payments and monthly allocations for taxes and insurance |
| $400.00 | Electricity and heating fuel |
| $120.00 | Clothing |
| $277.00 | Telephone |
| $1,200.00 | Food |
| $169.00 | Camper |

At the time they filed their petition for relief, the Debtors were insolvent, reporting assets of $244,897.16 against liabilities of $290,577.46. The Debtors' assets of significance consisted of their residence valued at $140,900.00, a 401(k) retirement account worth $71,310.16, and three vehicles: a 2004 Dodge Ram Truck valued at $12,385.00; a 2001 Chrysler Sebring with an assigned value of $2,970.00; and a 2003 Sportman Travel Trailer valued at $6,110.00. Of their $290,577.46 in liabilities, $179,729.00 was categorized as secured debt, with the remaining $110,848.46 disclosed to be unsecured debt.

The Debtors' unsecured debt is comprised mainly of credit card and other consumer related transactions. For their secured debt, the Debtors set forth that their residence is encumbered by a first and second mortgage and a judgment lien totaling $160,872.00. For their remaining secured debt, the Debtors reported a claim of $10,602.00 against their Truck and a partially secured claim of $8,255.00 against their Travel Trailer. With the exception of the judgment lien, the Debtors, at the

Page 4

**In re: Garland/Elena Scarberry**
**Case No. 09-33316**

time they sought bankruptcy relief, set forth an intention to reaffirm on each of their secured debts. Since seeking bankruptcy relief, however, the Debtors have surrendered their Trailer.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee (hereinafter the "UST") to Dismiss the Debtors' bankruptcy case in accordance with 11 U.S.C. § 707(b). Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are deemed to be core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

As the basis for its Motion under § 707(b), the UST set forth that the dismissal of this "case is warranted under the totality of the circumstances standards of 11 U.S.C. Section 707(b)(3) because the Debtors are not needy." (Doc. No. 16, at pg. 6). This particular basis for dismissal, a lack of need, can be traced to the decision of the Sixth Circuit Court of Appeals rendered in the case captioned *In re Krohn*, 886 F.2d 123 (6th Cir. 1989).

In *In re Krohn*, the Court held that, for purposes of § 707(b), "abuse can be predicated upon either lack of honesty or want of need." *Id.* at 126. Need, in this sense, according to the Court in *In re Krohn*, requires a bankruptcy court to consider the debtor's entire financial pictures, and to then "ascertain from the totality of the circumstances whether [the debtor] is merely seeking an advantage over his creditors, or . . . whether he is 'needy' in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." *Id.* The position of the UST, that the Debtors are not 'needy' of Chapter 7 relief, is fully consistent with this global approach.

Page 5

First, the facts put before the Court suggest that the Debtors have some ability to repay their debts. In *In re Krohn*, the Court explained, "[a]mong the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings." This consideration concerning a debtor's ability to pay is, moreover, afforded particular weight, with the Court in *In re Krohn* further commenting that this "factor alone may be sufficient to warrant dismissal. What is of initial concern in this matter are those reoccurring monthly expenses budgeted by the Debtors. Specifically, in assessing the Debtors' ability to pay, the Court takes issue with the full amount of those expenses claimed by the Debtors for housing, food and phone service.

For purposes of § 707(b)(3), an assessment of a debtor's ability to pay is normally made by looking to the amount of "disposable income" a debtor has available. As set forth in *In re Krohn*, "a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease." *Id*. The determination as to the amount of "disposable income" available to a debtor, when assessing their ability to repay their debts, is made exclusively by the court, and is thus not dependent on the financial figures put forth by the debtor or any other party. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007).

The term 'disposable income' is afforded a distinct meaning under the Bankruptcy Code, being defined generally as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2). Whether an expense is reasonably necessary is dependent on the individual circumstances of each case. As boundaries, however, this Court has observed that, while a debtor is not required to live in poverty to defeat a § 707(b) action to dismiss, a debtor may still be required to engage in some good, old-fashioned belt tightening. *In re Kaminski*, 387 B.R. 190 (Bankr. N.D.Ohio 2008), *citing In re Krohn*, 886 F.2d at 128. As such, in an action brought under § 707(b)

Page 6

to dismiss for abuse, a debtor may be expected to forego amenities to which he or she may have become accustomed.

In this matter, the Debtors reported a monthly disbursement of $1,647.00 to service the two mortgages encumbering their residence as well as to pay for the property's necessary taxes and insurance. The Debtors also then report that they need to allocate an additional $400.00 to maintain basic utilities for their residence. The Debtors, thus, allocate over $2,000.00 a month to maintain their home, an amount which does not even include other necessary expenditures such as that for maintenance and repair. While such an amount is not necessarily extravagant, it does not strike this Court as indicative of belt-tightening, particularly given that the Debtors' monthly housing expenditures consume a significant portion, approximately 38%, of the Debtors' net monthly income of $5,389.20.

The same is also true of the Debtors' monthly expenditures for food and telephone service. While the Court appreciates that the Debtors have three children, neither a $1,200.00 monthly allocation for food, nor a $277.00 expenditure for monthly telephone service, evokes the notion of debtors making an honest attempt to minimize their expenses. Relevant to this conclusion are two matters. First, the dollar allowance permitted under the 'means test' calculation of § 707(b)(2) limits expenditures for food to $1,014.00 per month for a family of five.[1] *See In re Violanti*, 397 B.R. 852, 858 (Bankr. N.D.Ohio 2008) (although not dispositive, court may look to expenses allowed under 'means test' of § 707(b)(2), when assessing abuse under § 707(b)(3)). Second, as with other like expenses, such as that for cable television, a debtor's creditors should also not be expected to pay for more than basic phone service – *e.g.*, generally cell phone service for things such as texting as well as nonessential calls are not permissible.

---

[1]

http://www.justice.gov/ust/eo/bapcpa/20091101/bci_data/national_expense_standards.htm

Page 7

The Court also finds other aspects of the Debtors' situation incompatible with a good faith attempt to minimize expenses. First, at the time the Debtors filed their bankruptcy petition, they set forth an intention to reaffirm a debt, costing $169.00 per month, on a camper/trailer. Such an expense, while presumably desirable, can hardly be viewed, under the Code's definition of "disposable income," as reasonably necessary to be expended for the maintenance and support of the Debtors and their dependents. *See In re Violanti*, 397 B.R. 852, 859-60 (Bankr. N.D.Ohio 2008) (debtor not permitted to use reaffirmation process to retain unnecessary property to the detriment of her unsecured creditors). In this type of situation, where a debtor seeks to reaffirm on secured debt of a nonessential nature, this Court has espoused and abided by the principle that bankruptcy relief, while meant to provide debtors with fresh start, is not a device to be used to enable one to perpetuate their bad financial decisions. *In re Kaminski*, 387 B.R. at 196.

Along this same line, nothing in the case shows that the Debtors' bankruptcy filing was precipitated by an unforseen or catastrophic event. Rather, the picture presented to the Court is one of a slow decline in the Debtors' financial situation brought on by the continuous accumulation of consumer credit. To be sure, this type of situation frequently occurs, and is not always indicative of abuse, with many such debtors being in 'need' of Chapter 7 relief. But as noted in *In re Krohn*, when assessing dismissal for abuse under § 707(b), a court should consider "whether [the debtor] was forced into Chapter 7 by unforeseen or catastrophic events." 886 F.2d at 126. Section 707(b), the Court also noted, "serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing." *Id.*

Besides the above considerations, the Court in *In re Krohn* set forth that "[o]ther factors relevant to need include whether the debtor enjoys a stable source of future income, [and] whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code . . . ." *Id.* Again, each of these considerations bends toward dismissal.

Page 8

**In re: Garland/Elena Scarberry**
**Case No. 09-33316**

For the first consideration, stability of future income, no indication was given that the Debtors do not have relatively stable employment, especially Mr. Scarberry who has worked for the same employer for 25 years. The Debtors also receive benefits, including health insurance, through their employers. It is also true that the Debtors earn, exclusive of benefits, approximately $90,000.00 per year, an amount appreciably above the median income of $80,201.00[2] for a family of five in Ohio. It is, therefore, fair to state that both of the Debtors are gainfully employed in stable positions, and that their household budget is appreciably benefitted by this situation.

Furthermore, consistent with *In re Krohn*, the Debtors are eligible for Chapter 13 relief, with their liabilities, both secured and unsecured, being well below the eligibility thresholds provided in § 109(e).[3] The Debtors' eligibility for Chapter 13 relief also blunts a primary point the Debtors put forth as to why the filing of their case should not be found to be abusive within the meaning of § 707(b).

In their latest financial filing with the Court, the Debtors set forth that Mr. Scarberry's income is expected to decline by 15%. Therefore, according to the Debtors, their ability to fund, on a forward going basis, a Chapter 13 plan of reorganization has been made more tenuous.

As an evidentiary matter, the Court finds the statement regarding a likely decline in Mr. Scarberry's income to be plausible, with Mr. Scarberry having offered credible oral testimony supporting this assertion. However, in the situation where debtors otherwise have ample financial

---

[2]

http://www.justice.gov/ust/eo/bapcpa/20091101/bci_data/median_income_table.htm.

[3]

Section 109(e) limits Chapter 13 relief to those debtors with regular income that owe on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650.

Page 9

resources available, the Court has not been receptive to the argument that a modest decline in income should be cause to reject the opportunities available for repayment through a Chapter 13 plan of reorganization. Instead, this Court has previously observed:

> if such a downturn in the Debtors' economic affairs should come to pass, the Bankruptcy Code affords the Debtors ample remedial measures. For example, if the Debtors' case is dismissed, nothing prevents them from later seeking bankruptcy relief under Chapter 7. Similarly, if the Debtors were again to decide to pursue relief within the context of a Chapter 13, they are still afforded with the ability to later seek the conversion of their case to one under Chapter 7, to modify their plan, or to seek a hardship discharge of their debts.

*In re Durczynski*, 405 B.R. 880, 887 (Bankr. N.D.Ohio 2009), *citing* 11 U.S.C. §§ 1307(a), 1328(b) & 1329(a). A couple of points here are worth noting.

First, the evidence presented at the Hearing revealed that the Debtors are now current on their monthly expenses. Second, their monthly budget presently allows the Debtors to save $150.00 per week. Therefore, even with a modest decline in income, the Debtors' budget appears to have a sufficient amount of redundancy to make a Chapter 13 plan feasible.

Based upon all these considerations, the Court, while finding not finding any consideration conclusive, is persuaded that, based upon the totality of their financial circumstances, granting the Debtors relief would be an abuse. As such, with no compelling circumstances indicating to the contrary, the Court holds that the Motion of the UST to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3) must be Granted. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 10

**In re: Garland/Elena Scarberry**
**Case No. 09-33316**

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, December 11, 2009, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

*IT IS FURTHER ORDERED* that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: November 24, 2009

Richard L. Speer
United States
Bankruptcy Judge

Page 11

# CERTIFICATE OF SERVICE

Copies were mailed this 24th day of November, 2009 to:


Garland W Scarberry, Jr
2181 Co Rd 3
Swanton, OH 43558

Elena Scarberry
2181 Co Rd 3
Swanton, OH 43558

United States Trustee
Howard M. Metzenbaum U. S. Courthouse
201 Superior Avenue, East
Suite 441
Cleveland, OH 44114

Linda Maria Battisti ust21
Office of the US Trustee
201 Superior Avenue
#441
Cleveland, OH 44114

Edward L Snyder
6910 Airport Hwy
#11
Holland, OH 43528-5701

Louis J Yoppolo
1200 Edison Plaza
300 Madison Ave
Toledo, OH 43604-1556


                              /s/Dawn Serna-Gensch
                    Deputy Clerk, U.S. Bankruptcy Court